John Joseph WHELAN

v.

The UNITED STATES.

No. 14–74.

United States Court of Claims.

Jan. 28, 1976.

John I. Heise, Jr., Silver Spring, Md., attorney of record, for plaintiff. Barbara C. Miller and Heise & Jorgensen, Silver Spring, Md., of counsel.

Richard J. Webber, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant. Iraline G. Peniston and Peter A. Wissner, of counsel.

Before LARAMORE, Senior Judge, KASHIWA and BENNETT, Judges.

KASHIWA, Judge.

This case is before this court on cross motions for summary judgment. Mate-

rial facts are not in dispute. We allow plaintiff's cross motion for summary judgment and deny defendant's motion for summary judgment for reasons hereafter stated.

Although this is an Internal Revenue Service (hereafter IRS) case, it relates to an interesting phase of IRS work less known to the public. An IRS employee with the consent of the Secretary of the Treasury may be assigned as a Reserve officer by the Secretary of State under the Foreign Service Act of 1946 as amended, 22 U.S.C. § 921 et seq. As such Reserve officer, he is assigned to foreign posts. In the present case the IRS employee was assigned first to Bolivia and later to Honduras. The pay problem in the case arose after the employee completed his service of about five years and returned to the IRS.

Plaintiff while employed by the IRS in the capacity of a Supervisory Auditor, Regional Inspector's Office, Chicago, Illinois, at grade GS–14, step 3, accepted a limited assignment under the aforesaid Foreign Service Act to the position of Public Administration Advisor—Tax, FC–3, in the Office of the Director, Foreign Tax Assistance Staff (hereafter FTAS), with a duty station at La Paz, Bolivia. This assignment, effective August 2, 1964, began at a salary of $15,675, which was equivalent at the time of a grade GS–15, step 1. Plaintiff's limited assignment to La Paz, Bolivia, was extended several times; and on September 10, 1967, he received a change in duty station from Bolivia to Honduras.

Plaintiff served with the FTAS for a period slightly in excess of five years. During this time he received numerous within-grade increases as well as a "high quality increase" in salary. As a result of these pay elevations, coupled with a statutory increase, and the conversion of the Foreign Compensation (hereafter FC) salary schedule from 14 grades to 12, plaintiff held the position of FC–2, step 3, at a salary of $26,525, at the expiration of his limited assignment to the FTAS in September, 1969.

The conversion of the FC salary schedule from 14 grades to 12, effective July 13, 1969, was made pursuant to AID Notice No. 73, dated July 8, 1969. At the time of the conversion, plaintiff had been holding an FC grade 3, step 6 position since July 28, 1968. That grade and step were then converted on the FC salary schedule to FC grade 2, step 2, at a salary of $25,696. Plaintiff thus held an FC grade 3, step 6 position or its equivalent (in reslotting to FC–2, step 2) for at least one year. He even received another within-grade increase prior to the expiration of his assignment to the FTAS. As a result, the nearest position to plaintiff's FC–2, step 3 classification, with salary at $26,525 at the time of his return to a state-side assignment was General Schedule grade GS–15, step 8, with a salary of $26,629.

Instead of receiving the classification of GS–15, step 8, which plaintiff had anticipated he would receive and to which he believed he was entitled, he was assigned to the position of Auditor (Special Assistant), GS–14, step 10, at a salary of $24,093. This resulted in a reduction in salary upon his return to state-side duty of $2,432 per annum. In questioning the propriety of his salary reduction, he initiated a grievance concerning his assignment to a GS–14 position instead of the comparable GS–15, step 8 slot. The steps he took are listed in the margin.[1]

---

1. Plaintiff's grievance was considered by the Internal Revenue Service at a first-level conference on October 20, 1972; and by a decision dated November 15, 1972, the Chief Placements Section denied plaintiff's grievance. On November 20, 1972, plaintiff appealed the matter further to the Chief of the National Office Branch, Personnel Division, IRS, seeking retroactive assignment to a GS–15 position with retroactive pay. In a decision dated November 27, 1972, the Chief of the agen-cy's National Office Personnel Branch concluded that the matter was not covered by IRS grievance procedures. On November 29, 1972, plaintiff filed an appeal with the Appeals Examining Office of the United States Civil Service Commission (hereafter CSC). The Appeals Examining Office of the CSC on December 20, 1972, declined to entertain plaintiff's appeal of his "alleged improper reinstatement on September 21, 1969 as it does not fall within the purview of the Commission's appellate juris-

Plaintiff filed his petition in this court on January 8, 1974. He seeks back pay and retirement credits due because of his improper assignment effective September 21, 1969, to the grade of GS–14, step 10, instead of to the position of GS–15, step 8, to which plaintiff claims the IRS was obligated to return him.

We quote at the outset the regulations as set forth by the agency in MT 1800–92 (1–5–68) of the IR Manual, particularly Section 183(10).9 entitled "Procedures for Returning Employees from FTAS," which provides in subparagraph (2) as follows:

> (2) Upon termination of assignments to FTAS, employees returning to the General Schedule (GS), who have satisfactorily completed overseas tours of at least one year, will have new GS salaries established on the basis of the *salary of the highest FC grade held for one year.* Should an employee's current FC salary fall between two GS step rates, the employee will be given the *higher* GS step. The new GS salary of an employee who did not satisfactorily complete an overseas tour of at least one year, will be set at the grade and step at which it would be had the employee not received an assignment with FTAS. Exceptions to the preceding salary-setting rules may be authorized by the Director, Personnel Division, when the best interests of the Service are involved." [Emphasis supplied.]

Defendant does not make a claim of exception predicated upon "the best interests" of the agency.

Plaintiff's entire suit is based on this regulation. He contends that the terms of this regulation were not complied with when the agency failed to assign plaintiff to the GS–15 grade upon completion of his overseas assignment.

There is no question that plaintiff at all times satisfactorily performed his overseas assignment. He argues that he was entitled to a GS–15 slot based on his salary in the "highest FC grade held for one year."

Defendant's brief well sets out plaintiff's grades and salaries for the one year preceding the expiration of plaintiff's limited assignment. We reproduce the chronology herein:

July 28, 1968–FC–3/6, $23,122.

July 13, 1969—(Pay System Change, Conversion in FC Salary Schedule from 14 to 12 Grades).

    From: FC–3/6, $23,122.

    To: FC–2/2, $25,696.

July 27, 1969—Within Grade Increase—FC–2/3, $26,525.

September 21, 1969—Expiration of Assignment.

Based on the above chronology, plaintiff argues that he held the grade of FC–3, step 6 or its equivalent (in reslotting FC–2/2), for at least one year and was entitled to receive a GS–15 position upon the expiration of his limited FTAS assignment.

■ Defendant argues that reversion to plaintiff's former or comparable GS–14 was a condition of his FTAS assignment. It is unable to point to any specific statute or regulation requiring such a condition. We hold that no such condition existed and such is not required by the language of the Foreign Service Act. The pertinent IRS regulation, Section 183(10).9(2), which is cited above, provides quite differently by *assuring* the employee that his new GS salary shall be "established on the basis of the salary of the highest FC grade held for one year."

■ The "plain meaning" rules of statutory construction [2] apply to the In-

diction." Plaintiff on January 3, 1973, sought further clarification from the Appeals Examining Office of his appeal. A response thereto was made on January 12, 1973, contending that further action must be before the Board of Appeals and Review of the CSC. By letter dated January 26, 1973, plaintiff appealed to the Board of Appeals and Review of the CSC.

By a decision dated April 10, 1973, the Board denied plaintiff's claim and reaffirmed the decision of the Appeals Examining Office.

2. It is well established in this court that the ordinary and commonly understood meaning shall be attributed to the terms employed in a statute, unless a contrary meaning is clearly

terpretation of administrative regulations. *Akins v. United States*, 194 Ct.Cl. 477, 486, 439 F.2d 175, 179 (1971); *Selman v. United States*, 204 Ct.Cl. 675, 681–83, 498 F.2d 1354, 1356–58 (1974). The terms of the applicable administrative regulation (MT 1800–92, Section 183 (10).9) are clear in this case. We hold that the agency erred in ignoring the express language.

The decision of the Board of Appeals and Review of the Civil Service Commission (hereafter BAR) is erroneous and not in keeping with the mandate provided by the agency's own regulations. The decision states in part as follows (p. 3):

The appellant was returned to the IRS in a like position to the one he occupied prior to his assignment with AID. By placing him in the top step of the grade, the agency fulfilled its obligation to give him a salary *appropriate to the salary* he was earning with FTAS. The agency thus complied with the law and regulations, PL 87–195, governing the reinstatement of the appellant and, under the circumstances, there could be no demotion as that term is applied to personal actions. [Emphasis in original.]

We find that the GS–14, step 10 slot assigned to plaintiff did *not* compensate him, to use the language of the BAR, with "a salary *appropriate to the salary* he was earning with FTAS" since it resulted in a reduction in pay of $2,432 per annum. Nor did it meet the more specific standard of the agency's own regulations providing for a new GS salary "established on the basis of the salary of the highest FC grade held for one year."

■ The binding force and effect of administrative regulations regarding personnel, and the adversely affected employee's right to corrective action (including salary lost) following violation or omissions thereof, were clearly defined by the Court in *Vitarelli v. Seaton*, 359

U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), and *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), as well as by this court in *Jones v. United States*, 203 Ct.Cl. 544 (1974); *Cason v. United States*, 200 Ct.Cl. 424, 471 F.2d 1225 (1973); *Fletcher v. United States*, 183 Ct.Cl. 1, 392 F.2d 266 (1968); *Conn v. United States*, 180 Ct.Cl. 120, 376 F.2d 878 (1967); *Cole v. United States*, 171 Ct.Cl. 178 (1965); *Middleton v. United States*, 170 Ct.Cl. 36 (1965); *Smith v. United States*, 155 Ct.Cl. 682 (1961); *Daub v. United States*, 154 Ct.Cl. 434, 292 F.2d 895 (1961); and *Watson v. United States*, 142 Ct.Cl. 749, 162 F.Supp. 755 (1958). When a Government official or agency lawfully prescribes rules and procedures, these are binding on the Government as well as on its citizens. *Yellin v. United States*, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Chapman v. Sheridan-Wyoming Coal Co.*, 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393 (1950); *Bridges v. Wixon*, 326 U.S. 135, 153 (1945); *Bilokumsky v. Tod*, 263 U.S. 149, 155, 44 S.Ct. 54, 68 L.Ed. 221 (1923).

In *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), the Court stated at p. 235, 94 S.Ct. at p. 1074:

Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. * *

And in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Court stated at p. 696, 94 S.Ct. at p. 3101:

* * * So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and enforce it. * * *

The claim here involves simply a slotting process stemming from the regula-

intended. *Benton v. United States*, 203 Ct.Cl. 263, 269, 488 F.2d 1017, 1020 (1973); *Coleman v. United States*, 93 Ct.Cl. 127, 131–33, 37 F.Supp. 273, 276 (1941); *Akins v. United*

*States,* 194 Ct.Cl. 477, 486, 439 F.2d 175, 179 (1971); *Boege v. United States*, 206 Ct.Cl. 560 (1975).

tions applicable to employees returning from the FTAS. The situation is analogous to that of *Kellerman v. United States*, 205 Ct.Cl. 484, 490, 504 F.2d 1128, 1132 (1974), wherein this court said:

> * * * The court's reasoning there [*Nordstrom v. United States*, 177 Ct.Cl. 818 (1966)] is equally applicable to the present dispute:
>
>> In the instant case, no exercise of discretion is required. Plaintiff is not seeking a promotion—he is seeking the benefit incident to a reclassification, an automatic action which applied to everyone [in plaintiff's position].
>
> 177 Ct.Cl. at 825. The case now at bar involves not a general reclassification of grade level but a similar general removal of a wage ceiling.

Just as in *Kellerman*, plaintiff had already received the promotion as a result of his meritorious service in the FTAS. This was an accomplished fact. The "automatic" salary slotting for the GS grade necessarily follows. The agency did not follow its own regulations. In affirming the decision of the agency and the Appeals Examining Office, the BAR erred.

BENNETT, Judge (concurring):

I deem it advisable and necessary to add a few words to the able opinion of Judge Kashiwa, in which I join. I agree that this case is ruled by a proper construction of IR Manual § 183(10).9(2), but would make that construction a bit more explicit.

The first sentence of subparagraph (2) reaches employees returning to the General Schedule from FTAS having satisfactorily completed tours of at least 1 year, such as the plaintiff. It states that the new salary of such an employee, on return, will be established by reference to the salary of the highest FC *grade* held for 1 year. The first sentence does not refer to the highest grade and *step* held for 1 year, a fact which seems occasionally to have escaped the parties. The second sentence goes on to discuss the *step* within grade, to which a returning employee will be assigned. Where the final FC-scale salary happens to fall between two steps within the appropriate GS grade, the returning employee will be entitled to the salary of the higher.

■ Given this construction we must decide whether the plaintiff held the *grade* of FC–2 or FC–3 for more than 1 year. The evidence indisputably shows that plaintiff's reslotting to FC–2 from FC–3 involved neither a promotion nor a demotion, but was merely the consequence of a reduction in the number of FC grades from 14 to 12. It is also true, however, that the FC–2 grade was assigned to plaintiff less than 1 year before his return to the General Schedule. On the peculiar facts of his case we have decided that in legal contemplation, the FC–2 grade does not differ from that of FC–3. Thus, we think it entirely permissible to say that for purposes of IR Manual § 183(10).9(2), plaintiff in effect held the grade of FC–2 for more than 1 year. The parties agree that FC–2 is equivalent to GS–15.

It remains only to determine the appropriate step within the grade of GS–15 to which plaintiff is entitled. The second sentence of subparagraph (2) makes this a simple matter—on return, plaintiff was entitled to the lowest step of GS–15 having a salary equal to or greater than that of his final FC grade and step.

The Internal Revenue Service clearly erred in applying its own procedures when it assigned this plaintiff to the grade and step of GS–14, step 10. I agree that plaintiff is entitled to recover.

LARAMORE, Senior Judge, agrees with Judge BENNETT's concurring opinion.

CONCLUSION

Defendant's motion for summary judgment is denied and plaintiff's cross motion for summary judgment is granted.

The amount of recovery will be determined pursuant to Rule 131(c). Pursuant to Rule 147(c), this court directs the Secretary of the Treasury to correct plaintiff's records in accordance with this opinion.