Durfee, Senior Judge,
delivered the opinion of the court:
In this civilian pay case, plaintiffs are seven present or former Internal Revenue Service (IRS) employees who accepted temporary overseas assignments with the Foreign Tax ■ Assistance Staff (FTAS) of the Agency for International Development (AID). This case is a sequel to Whelan v. United States, 208 Ct. Cl. 688, 529 F.2d 1000 (1976).
Plaintiffs contend that, upon expiration of their FTAS assignments, they each were returned to the IRS at an unlawfully low General Schedule (GS) grade and step. Plaintiffs premise their argument upon Internal Revenue Manual (IRM) § 183(10).9(2),[1] which provides:
Upon termination of assignments to FTAS, employees returning to the General Schedule (GS), who have satisfactorily completed overseas tours of at least one year, will have new GS salaries established on the basis of the salary of the highest FC grade held for one year. Should an employee’s current FC salary fall between two GS step rates, the employee will be given the higher GS step. The new GS salary of an employee who did not satisfactorily complete an overseas tour of at least one year, will be set at the grade and step at which it would be had the employee not received an assignment with FTAS. Exceptions to the preceding salary-setting rules may be authorized by the Director, Personnel Division, when the best interests of the Service are involved.
Since the instant case is so intertwined with the decision in Whelan, we will discuss, in some detail, the facts and holding of that case. Whelan involved an employee who, upon his return to the IRS from an overseas assignment with FTAS, was assigned to a GS-14, step 10 position at an *23 annual salary lower than the salary he was receiving prior to the expiration of his FTAS assignment. Whelan maintained that, under IRM § 183(10).9(2) (the same regulation as involved in the instant case), he was entitled to a GS-15, step 8 position, which would not result in a salary decrease. Defendant argued that reversion to Whelan’s former GS-14 grade (or a comparable position) was a condition of his assignment with FTAS. After finding that Whelan had effectively occupied the same FTAS grade for more than one year, the court rejected defendant’s argument by stating:
We hold that no such condition existed and such is not required by the language of the Foreign Service Act. The pertinent IRS regulation, Section 183(10).9(2), which is cited above, provides quite differently by assuring the employee that his new GS salary shall be "established on the basis of the salary of the highest FC grade held for one year.”
* * * * *
We find that the GS-14, step 10 slot assigned to plaintiff did not compensate him * * * with "a salary appropriate to the salary he was earning with FTAS” since it resulted in a reduction in pay of $2,432 per annum. Nor did it meet the more specific standard of the agency’s own regulations providing for a new GS salary "established on the basis of the salary of the highest FC grade held for one year.” [Emphasis in original.] [208 Ct. Cl. at 693-94, 529 F.2d at 1002-03.]
Defendant in the instant case seeks to distinguish the Whelan decision on two principal grounds: first, that the Director of the Personnel Division of IRS, subsequent to Whelan, has invoked an exception to IRM § 183(10X9(2), as authorized by the last sentence of that regulation; second, that plaintiffs’ claims are barred by the doctrine of laches. Alternatively, defendant contends that the Whelan decision is incorrect and should be overruled. No genuine issues of material fact exist, and disposal by summary judgment is appropriate under Rule 101(d).
Since the factual circumstances surrounding each plaintiffs claim are not identical, we reproduce the relevant chronology with regard to each plaintiff:
*24 Carrasco (one tour):[2]
— GS-13/1 with IRS prior to FTAS assignment.
— 1/30/66: commenced FTAS assignment at FC-5/3.
— 1/1/67: promoted to FC-4/1.
— 7/13/69: FC schedule change pursuant to AID Notice No. 73; grade and step converted from FC-4/3 to FC-3/1.
— 6/28/70: expiration of FTAS assignment at FC-3/2, $21,584; return to IRS at GS-13/10, $21,791 (increase of $207).
— time delay from return to IRS until filing suit: 5 years, 11 months.
— relief sought: back pay to compensate for the loss of subsequent within-grade step increases occasioned by being slotted at GS-13/10 (the grade ceiling), rather than GS-14/4, upon return to IRS.[3]
Caso (two tours):[4]
Tour #2:
— GS-11/10 with IRS prior to FTAS assignment.
— 11/16/69: commenced FTAS assignment at FC-4/1.
— 1/10/71: FC schedule change pursuant to Pub. L. No. 91-656; grade and step converted from FC-4/3 to FC-10/3.
— 7/2/72: expiration of FTAS assignment at FC-10/4, $20,612; return to IRS at GS-11/10, $17,305 (decrease of $3,307).
— the lowest GS grade and step to which an FC-10/4 could have been transferred without loss of pay on 7/2/72 was GS-12/10 at $20,627.
— time delay from return to IRS until filing suit: 3 years, 1Ó months.
— relief sought: back pay representing the difference receivable if slotted at GS-13/4, rather than GS-11/10, upon return to IRS, including loss of any subsequent within-grade step increases.
Gonzales (three tours):
Tour #2:
— GS-14/7 with IRS prior to FTAS assignment.
*25 — 8/31/69: commenced FTAS assignment at FC-3/6.
— 1/10/71: FC schedule change pursuant to Pub. L. No. 91-656; grade and step converted from FC-3/7 to FC-12/4.
— 10/31/71: expiration of FTAS assignment at FC-12/4, $26,563; return tó IRS at GS-14/10, $27,061 (increase of $498).
— time delay from return to IRS until filing suit: 4 years, 6 months.
— relief sought: back salary and back retirement pay to compensate for being slotted at GS-14/10, rather than GS-15/4, upon return to IRS.
Gonzales:
Tour #3:
— GS-14/10 with IRS prior to FTAS assignment.
— 7/9/72: commenced FTAS assignment at FC-12/5.
— 1/20/74: expiration of FTAS assignment at FC-12/6, $32,680; return to IRS at GS-14/10, $31,519 (decrease of $1,161),
— the lowest GS grade and step to which an FC-12/6 could have been transferred without loss of pay on 1/20/74 was GS-15/6 at $32,973.
— time delay from return to IRS until filing suit: 2 years, 4 months.
— relief sought: back salary and back retirement pay to compensate for being slotted at GS-14/10, rather than GS-15/6, upon return to IRS.
Lugo (one tour):
— GS-11/3 with IRS prior to FTAS assignment.
— 11/28/65: commenced FTAS assignment at FC-7/6.
— 7/30/67: promoted to FC-6/3. ,
— 7/13/69: FC schedule change, pursuant to AID Notice No. 73; grade and step converted from FC-6/4 to FC-5/5.
— 5/17/70: expiration of FTAS assignment at FC-5/6, $15,888; return to IRS at GS-11/10, $15,478 (decrease of $410).
— the lowest GS grade and step to which an FC-5/6 could have been transferred without a loss of pay on 5/17/70 was GS-12/5 at $16,084.
— time delay from return to IRS until filing suit: 5 years, 11+ months.
— relief sought: back pay representing the difference receivable if slotted at GS-12/5, rather than GS-11/10 (the grade ceiling), upon return to IRS, including loss of any subsequent within-grade step increases.
Mangerich (one tour):
*26 — GS-14/2 with IRS prior to FTAS assignment.
— 6/12/66: commenced FTAS assignment at FC-4/4.
— 12/5/66: promoted to FC-3/1.
— 6/30/68: promoted to FC-2/1.
— 7/13/69: FC schedule change pursuant to AID Notice No. 73; grade and step remained at FC-2/2.
— 8/24/70: expiration of FTAS assignment at FC-2/3, $28,116; return to IRS at GS-14/10, $25,538 (decrease of $2,578).
— the lowest GS grade and step to which an FC-2/3 could have been transferred without a loss of pay on 8/24/70 was GS-15/8 at $28,226.
— time delay from return to IRS until filing suit: 5 years, 9 months.
— relief sought: back salary and back retirement pay to compensate for being slotted at GS-14/10, rather than GS-15/8, upon return to IRS.
Martin (two tours):
Tour #2:
— GS-15/10 with IRS prior to FTAS assignment.
— 9/8/68: commenced FTAS assignment at FC-3/10.
— 7/13/69: FC schedule change pursuant to AID Notice No. 73; grade and step converted from FC-3/10 to FC-2/6.
— 10/18/70: expiration of FTAS assignment at FC-2/7, $31,632; return to IRS at GS-15/10, $29,752 (decrease of $1,880):
— the lowest GS grade and step to which an FC-2/7 could have been transferred without a loss of pay on 10/18/70 was GS-16/7 at $31,857.
— time delay from return to IRS until filing suit: 5 years, 7 months.
— relief sought: back salary and back retirement pay to compensate for being slotted at GS-15/10, rather than GS-16/7, upon return to IRS.
Osburn (one tour):
— GS-14/8 with IRS prior to FTAS assignment.
— 1/21/68: commenced FTAS assignment at FC-4/9.
— 7/13/69: FC schedule change pursuant to AID Notice No. 73; grade and step converted from FC-4/9 to FC-3/7.
— 7/12/70: termination of FTAS assignment at FC-3/7, $25,064; return to IRS at GS-14/10, $25,538 (increase of $474).
— time delay from return to IRS until filing suit: 5 years, 10 months.
— relief sought: back pay to compensate for the loss of subsequent within-grade step increases occasioned by *27 being slotted at GS-14/10 (the grade ceiling), rather than GS-15/4, upon return to IRS.
I.

The Exception to IRM § 183(10X9(2)

The final sentence of IRM § 183(10).9(2) states that "[ejxceptions to the preceding salary-setting rules may be authorized by the Director, Personnel Division, when the best interests of the Service are involved.” The court in Whelan specifically noted that defendant did not make such a claim of exception. 208 Ct. Cl. at 692, 529 F.2d at 1002. On August 17, 1976, after plaintiffs had terminated their assignments with FTAS and returned to IRS, after this court’s decision in Whelan, and after plaintiffs had filed suit in the instant case, the Director of the Personnel Division for IRS issued a memorandum purporting to "except any claims, to any higher GS-grade positions than their former, 'same or comparable’ GS-grade positions, by FTAS/TAAS overseas returnees, from the provisions of former IRM 183(10).9(2).”
Defendant contends that the exception was taken in the best interests of the agency, particularly in view of its assertion that the Whelan decision overturned thirteen years of consistent administrative practice. As to the question of why the exception was not taken earlier, defendant argues that the IRS could not have foreseen the need to invoke the exception until the Whelan decision overturned its past administrative practice and that, if plaintiffs had timely asserted their claims, the exception - would almost certainly have been authorized in an equally timely manner. The memorandum of the Director claiming to invoke the exception maintains that the Whelan decision may require IRS to grant noncompetitive promotions in violation not only of existing collective bargaining agreements and merit promotion plans, but also of laws and regulations applicable to Civil Service positions. The memorandum further states the position that IRS never intended for an employee returning from an FTAS assignment to be granted any higher GS-grade position *28 than the former GS-grade position held prior to commencement of the FTAS assignment.
We are not persuaded by defendant’s argument. To permit IRS to invoke the exception clause after plaintiffs returned to IRS from their FTAS assignments, after the decision in Whelan, and after suit had been filed in the instant case would essentially render IRM § 183(10).9(2) meaningless. Such an exception clause, predicated on "the best interests of the Service”, was not intended as an escape hatch through which defendant could effectively defeat reasonable claims by plaintiffs at any stage of proceedings prior to final judicial resolution of such claims.
IRM § 183(10).9(2) was obviously intended to provide an incentive or assurances for IRS employees to accept temporary overseas assignments with FTAS. What defendant overlooks is the fact that plaintiffs had completed their end of the arrangement. Upon termination of their FTAS assignments and return to IRS, plaintiffs became entitled to the benefit of the regulation. We hold that the Director’s August 17, 1976 memorandum purporting to invoke the exception clause of IRM § 183(10).9(2) was of no effect in relation to plaintiffs because it was not timely issued.
II.

Laches

Defendant argues that plaintiffs’ claims should be barred by laches. This argument is premised on the fact that plaintiffs Carrasco, Lugo, Mangerich, Martin, and Osburn each returned from his FTAS tour at issue over 5% years prior to the filing of the petition; plaintiff Caso waited over 3Vz years; and plaintiff Gonzales delayed over 4% years and 2 years, respectively, after completion of his second and third FTAS tours.[5]
Defendant maintains that prejudice to the Government exists in that, if plaintiffs are entitled to recover, they will be promoted to positions which have already been filled by *29 promotion of others. By way of example, if a plaintiff were slotted at a GS-13 position upon return to IRS, and the court then determines that he should have been slotted at a GS-14 position, defendant contends that a duplication of salary would exist in the differential between the two salary rates because the agency would be paying the salaries of two GS-14 positions, rather than of one GS-14 and one GS-13. Defendant also contends that additional prejudice to the Government exists in the form of administrative disruption, in that recovery for plaintiffs would entail promotions which would conflict with collective bargaining agreements and merit promotion requirements.
We do not feel that plaintiffs’ claims should be barred by laches. Since laches is an equitable doctrine, there is no automatic formula to apply. Each case must be determined in light of its own particular facts. The two essential elements that must be present before this court will bar a claim through laches are an unreasonable delay by plaintiff in prosecuting the claim and resulting prejudice to defendant. Wilmot v. United States, 205 Ct. Cl. 666, 684-85 (1974); Albright v. United States, 161 Ct. Cl. 356, 362-63 (1963). The longer the delay, the less the need, on the part of defendant, to show specific prejudice. Gersten v. United States, 176 Ct. Cl. 633, 636, 364 F.2d 850, 852 (1966).
Admittedly, plaintiffs did wait substantial periods of time from the termination of their FTAS assignments before commencing suit. However, despite this delay, the prejudice to defendant appears minimal and falls short of the degree required to warrant laches under the facts of this case. The most significant example of prejudice to the Government in civilian pay cases is the duplication of salary situation, where an illegally discharged employee is given back pay and his replacement has also been drawing the salary of the position. Wilmot v. United States, supra, 205 Ct. Cl. at 685.
No such duplication of salary is present here. Defendant’s argument that plaintiffs, if entitled to recover, will be promoted to positions already occupied by others with resulting prejudice to the Government would not normally seem to have the serious financial and administrative *30 consequences which attend a total duplication of salary. Moreover, we fail to see evidence of any serious administrative disruption in regard to defendant’s claims concerning conflict with collective bargaining agreements and merit promotion requirements. To properly slot returning FTAS employees in accordance with appropriate regulations should aid, not disrupt, the administrative process.
III.
Effect of Whelan v. United States
Defendant’s alternative argument is that Whelan v. United States, 208 Ct. Cl. 688, 529 F.2d 1000 (1976) should be overruled.[6] We are of the opinion that Whelan was correctly decided, and that its precedent should control the instant case.
Defendant contends that the Whelan decision was legally in error for the following reasons: either the court erroneously concluded that the case involved a slotting process when, in fact, the court was ordering Whelan’s promotion or the court wrongfully interpreted IRM § 183(10).9(2) as a mandatory promotion regulation. Defendant further maintains that the Whelan court apparently chose the former alternative because it determined that "[t]he claim here involves simply a slotting process”. 208 Ct. Cl. at 695, 529 F.2d at 1003-04. Defendant viewed the court’s action as retroactively promoting Whelan from one position to a different, higher grade position. Concomitantly, defendant argues that promotion with FTAS does not imply equivalent promotion with IRS since FTAS positions are excepted positions which can be filled without regard to Civil Service Commission (CSC) competitive registers. Thus, defendant argues, it cannot be said that because an individual may receive an FTAS promotion, this promotion automatically carries over to a permanent GS position with IRS.
*31 We agree with defendant that the Whelan court viewed that case as essentially involving a slotting process. We also agree that a given promotion with FTAS does not automatically and of itself imply an equivalent promotion with IRS since they entail two separate classification systems. However, it is evident from the language of IRM § 183(10).9(2) and the circumstances surrounding its adoption that one of its primary purposes was to reconcile such problems concerning the transfer of employees between these separate systems. The regulation also resolves the administrative dilemma resulting from the possibility that persons called upon to serve FTAS assignments may, on the basis of meritorious service, receive promotions or pay increases with FTAS, yet simultaneously be deprived of the opportunity for corresponding promotions or increases with respect to their IRS positions. As a practical matter, IRS undoubtedly was of the opinion that it would be more difficult to recruit FTAS volunteers if they would not be able to retain the benefits of salary increases earned with FTAS upon return to IRS. Recognizing the potential difficulties in reconciling the two classification systems, the IRS’s choice of so doing by means of comparing salaries is reasonable.
We are well aware of the principle that this court is not to entangle itself in the promotion process concerning Government employees. Crowley v. United States, 208 Ct. Cl. 415, 431, 527 F.2d 1176, 1184-85 (1975). In situations such as Whelan and the instant case, there exists a fine line by which to differentiate whether the claim involves a slotting process or whether the court is essentially usurping agency discretion and ordering a promotion. However, this line is not erased by a proper application of the Whelan rationale despite the fact that an employee may thereby be slotted at a higher GS grade than the one held prior to commencement of his FTAS assignment. No discretion as to promotions or other functions reserved for the agency are thereby vested in the court. Under the particular circumstances present, the reconciliation of the two nonidentical classification systems by IRM § 183(10).9(2) is best viewed as being essentially in the nature of a slotting process, as opposed to an intrusion by the court *32 into the promotion business. This situation is properly analogous to this court’s decisions in Kellerman v. United States, 205 Ct. Cl. 484, 490, 504 F.2d 1128, 1132 (1974); Jarett v. United States, 195 Ct. Cl. 320, 329, 451 F.2d 623, 628 (1971); and Nordstrom v. United States, 177 Ct. Cl. 818, 825-26 (1966).
Consequently, the court is not mandating retroactive promotions under the guise of a slotting process. Utilization of IRM § 183(10).9(2) as the means of reconciling the two separate classification systems was properly construed in Whelan as a slotting process.
The only task remaining is to apply IRM § 183(10).9(2) to each plaintiffs particular circumstances. The regulation provides that returning FTAS employees, having satisfactorily completed a minimum one-year tour, "will have new GS salaries established on the basis of the salary of the highest FC grade held for one year.” As Judge Bennett correctly points out in his concurring opinion in Whelan, this language refers to grade only, not to grade and step. 208 Ct. Cl. at 695-96, 529 F.2d at 1004. The second sentence of the regulation discusses the appropriate step to which the returning employee is entitled.
The essence of the Whelan interpretation of IRM § 183(10).9(2) is that IRS is required to compensate the returning employee "with 'a salary appropriate to the salary he was earning with FTAS’ ”. [Emphasis in original.] 208 Ct. Cl. at 694, 529 F.2d at 1003. Assuming that an employee held his highest FC grade for at least one year (as all plaintiffs here did with respect to the tours at issue), defendant cannot, consistent with this regulation, reduce his final FTAS salary upon return to IRS. This is true even though giving the employee a salary equal to or greater than his final FTAS salary may entail slotting him in a higher GS grade than that from which he commenced his FTAS assignment.
Unlike Whelan, plaintiffs Carrasco, Gonzales (for his second tour only), and Osburn did not have their salaries reduced upon return to IRS. However, they contend that they were wrongfully slotted at the highest step of a lower GS grade, rather than at a lower step of the next higher grade. Being slotted in this way, they lost the opportunity *33 for subsequent within-grade step increases for which they would have been eligible if slotted at a lower step of the higher grade.
We do not interpret IRM § 183(10).9(2) and Whelan in a way that obligates IRS to place a returning FTAS employee in a higher GS grade when a salary equal to or greater than his final FTAS salary is available through utilization of a lower grade at a higher step. This assumes, of course, that the grade at which the employee is slotted upon return is not lower than the GS grade held prior to the FTAS assignment. The regulation does not explicitly take into account the fact that an FTAS salary could be translated to an equivalent GS salary at different steps of different grades. However, by viewing the regulation in the context of what it intended to accomplish, defendant need only compensate a plaintiff "with 'a salary appropriate to the salary he was earning with FTAS’ ”. [Emphasis in original.] Whelan, supra, 208 Ct. Cl. at 694, 529 F.2d at 1003. Consequently, the claims of plaintiffs Carrasco, Gonzales (for his second tour only), and Osburn must be dismissed.
On the other hand, since plaintiffs Caso (for the tour at issue only), Gonzales (for his third tour only), Lugo, Mangerich, and Martin (for the tour at issue only) suffered salary decreases upon return in the same manner that Whelan did, they are entitled to recover appropriate back pay and allowances. Such recovery should reflect the differential between the GS grade and step at which they were improperly slotted and the lowest GS grade and step at which they should have been slotted without a loss of pay upon return to IRS.
CONCLUSION
The parties’ respective cross-motions for summary judgment are granted in part and denied in part in accordance with this opinion. The amount of recovery for plaintiffs entitled to recover will be determined pursuant to Rule 131(c). The court directs the Secretary of the Treasury to *34 correct the records of those plaintiffs entitled to recover in accordance with this opinion pursuant to Rule 147(c).

 MT 1800-92 (1-5-68). IRM § 183(10).9(2) was superseded by IRM § 0352.3, effective 1975.

 Within-grade and quality step increases are omitted. Plaintiffs Caso, Gonzales, and Martin each served more than one FTAS tour. The facts concerning only those tours directly at issue are repeated here. These statistics are provided for background information. They are not intended to constitute findings binding on the trial judge for purposes of any future Rule 131(c) proceedings.

 All plaintiffs also seek appropriate correction of records and retirement credits.

 We interpret plaintiff Caso’s petition as seeking relief only for his second FTAS tour. This interpretation is based on several factors including the six-year statute of limitations, his subsequent FTAS tour, and his affidavit.

 Defendant also contends that the initial FTAS assignments of plaintiffs Caso, Gonzales, and Martin, although not at issue in this case, are relevant for purposes of laches in that they make even more unreasonable plaintiffs’ delay in filing suit.

 Defendant also requests that, if this three-judge panel will not overrule a recent decision (i.e., Whelan) by another panel of this court, our panel recommend to the full court that the instant case be considered en banc. We deny this request. It should be noted that defendant did not seek review by the Supreme Court of the Whelan decision.