G. Ivan TRABAL

v.

The UNITED STATES.

No. 42–79.

United States Court of Claims.

June 18, 1980.

Cowen, Senior Judge, filed dissenting opinion.

John I. Heise, Jr., Silver Spring, Md., attorney of record, and John P. Rhody, Jr., Silver Spring, Md., of counsel, for plaintiff.

Stephen G. Anderson, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Louis B. Jack, Internal Revenue Service, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and NICHOLS, Judge.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

For the fourth time, we are required to determine the pay to which an employee of the Internal Revenue Service is entitled upon his return to duty with the Service in the United States following service overseas under the Foreign Tax Assistance Program (FTAS). In the first two cases, *Whelan v. United States*, 208 Ct.Cl. 688, 529 F.2d 1000 (1976), and *Carrasco v. United States*, 215 Ct.Cl. 19 (1977), we held that the returning employee was entitled to the higher pay he had received in the FTAS rather than the pay he had been receiving in the IRS when he began the FTAS service. In the third case, *Flaherty v. United States*, 222 Ct.Cl. ——, 610 F.2d 756 (1979), we held that the returning employee was not entitled to the higher pay. In the present case, before us on cross-motions for summary judgment, we once again hold for the employee.

I.

Under the Foreign Tax Assistance Program, selected employees of the Internal Revenue Service are assigned temporarily to Latin American countries to aid those governments in the reform and improvement of the administration of their tax laws. The employees' participation in the program is voluntary.

The plaintiff was selected for the program in July 1968. At that time he was a grade GS–11, step 5, with an annual salary of $11,563. His assignment to the Foreign Tax Assistance staff was at the salary of GS–12. In that program, however, he was under a different salary classification system, in which the grade level was called "FC" rather than the "GS" of the classified Civil Service. The plaintiff was assigned to La Paz, Bolivia. In July 1973, plaintiff received a new assignment to Montevideo, Uruguay.

The plaintiff's assignment under the Foreign Tax Assistance Program terminated in the summer of 1975 when he returned to the Internal Revenue Service in the United States. During his 7 years abroad in the FTAS he had received several promotions. For more than a year prior to his return to the United States, he had been receiving a salary under the FC system ($30,849) which was the equivalent of a GS–15. Upon his return to the IRS, however, he was given a grade of GS–11, step 10.

Under IRS regulations, he retained his existing FTAS salary for 2 years, with a reduction to $28,824 to reflect the loss of cost-of-living allowances he had received while in Uruguay. In March 1976, plaintiff was promoted to GS–12, step 10. In July 1977, plaintiff's 2-year salary retention ended and his salary was reduced to $26,571, the salary of GS–12, step 10.

In January 1976, approximately 6 months after plaintiff returned to the United States, this court decided *Whelan v. United States*. We there held that a similarly situated IRS employee who had returned to the United States prior to the amendment of the governing regulation discussed below was entitled to the pay he had received

while in the FTAS. 208 Ct.Cl. at 694, 529 F.2d at 1003. One year later, in January 1977, the plaintiff requested the IRS to give him the same relief the court had given to Mr. Whelan. When the IRS refused to do so, the plaintiff filed the present suit in February 1979. He seeks back pay for the difference between the salary of a GS–15 and the amount he actually has received for the period since he returned to duty in the United States in July 1975.

## II.

When the plaintiff joined the FTAS in 1968, the Internal Revenue Service had two regulations, contained in its Manual, that dealt with the reemployment rights of such employees. Section 183(10).8(1) of the Manual, which was part of a section entitled "Reemployment Rights," stated that "[e]mployees receiving overseas assignments with FTAS have statutory reemployment rights to their old or comparable positions for up to 30 months,"[1] and section 183(10).8(2) stated that "[e]mployees who receive a second consecutive overseas assignment are administratively granted the same reemployment rights as in (1) above," with an exception here inapplicable. Section 183(10).9(2), which is part of a section entitled "Procedures for Returning Employees from FTAS," provided as follows:

> Upon termination of assignments to FTAS, employees returning to the General Schedule (GS), who have satisfactorily completed overseas tours of at least one year, will have new GS salaries established on the basis of the *salary of the highest FC grade held for one year.* Should an employee's current FC salary

fall between two GS step rates, the employee will be given the higher GS step. The new GS salary of an employee who did not satisfactorily complete an overseas tour of at least one year, will be set at the grade and step at which it would be had the employee not received an assignment with FTAS. Exceptions to the preceding salary-setting rules may be authorized by the Director, Personnel Division, when the best interests of the Service are involved. [Emphasis supplied.]

On March 31, 1975, less than 4 months before the plaintiff left the FTAS, the IRS significantly revised the foregoing regulation. The new provisions, contained in section 0352 of the Manual, (a) eliminated section 183(10).9(2), providing for return at a salary based upon the highest grade held in the FTAS, (b) continued sections 183(10).8(1) and (2) (which became sections 0352.31(1) and (2)), and (c) added a new provision (section 0352(5)), stating that prior to receiving a third consecutive overseas assignment, the employee will be assigned to a "holding" position in the IRS, and that the employee's reemployment rights will relate to that position.

## III.

The issue between the parties is as follows: The plaintiff contends that upon his return to the IRS in July 1975, he had a vested right under section 183(10).9(2) of the Manual to receive a salary equivalent to that of the grade he had held for more than a year in the FTAS (namely, the salary of a GS–15) and that the government could not terminate that right by repealing the regu-

---

1. The reference to "statutory reemployment rights" apparently was to 22 U.S.C. § 928 (1976). That section provides that upon termination of an assignment to the Foreign Service Reserve, which IRS employees in the FTAS received, the employee "shall be entitled to reinstatement in the Government agency by which he is regularly employed in the same position he occupied at the time of assignment, or in a corresponding or higher position," and that upon reinstatement he is entitled to the within grade salary increases he would have received had he remained in that position.

A 1962 memorandum from the Deputy Commissioner of Internal Revenue to all Assistant and all Regional Commissioners described the FTAS and, requesting suggestions for personnel to participate in the program, stated:

> After completion of their assignments, these individuals will be offered their former positions, or similar ones, in the same commuting area. Upon reassignment in the United States under these circumstances, their salaries will not be less than those to which they would have been entitled, considering in-grade step increases, if they had not volunteered for the foreign assignments.

lation 3½ months before the plaintiff returned to the IRS. The government, however, argues that the plaintiff's reemployment rights must be determined pursuant to and on the basis of the regulation as it stood on the date the plaintiff rejoined the IRS, that on that date the only reemployment right plaintiff had was to be restored to the position he had held when he joined the FTAS 7 years before, and that the government could change the regulation at any time without infringing any of plaintiff's rights that had not yet accrued. Resolution of this issue requires careful analysis of our three previous decisions dealing with the problem.

In *Whelan v. United States, supra,* the employee was a GS–14 when he joined the FTAS in 1964 at a salary equivalent to GS–15. His FTAS assignment terminated in 1969, but on return to the Service he was reemployed at grade GS–14 rather than GS–15. We held that the "plain meaning" of section 183(10).9(2) was that the plaintiff was entitled to receive a GS–15 salary, since that section "*assur[es]* the employee that his new GS salary shall be 'established on the basis of the salary of the highest FC grade held for one year,'" and that "the agency erred in ignoring the express language" of the regulation. 208 Ct.Cl. at 693, 529 F.2d at 1002–03.

*Carrasco v. United States, supra,* involved a similar situation where seven employees completed their FTAS assignments before the Manual was changed. The court rejected the government's argument that *Whelan* should be overruled, concluding instead that it was "correctly decided." 215 Ct.Cl. at 30. The court pointed out (*id.* at 31) that section 183(10).9(2)

> resolves the administrative dilemma resulting from the possibility that persons

called upon to serve FTAS assignments may, on the basis of meritorious service, receive promotions or pay increases with FTAS, yet simultaneously be deprived of the opportunity for corresponding promotions or increases with respect to their IRS positions. As a practical matter, IRS undoubtedly was of the opinion that it would be more difficult to recruit FTAS volunteers if they would not be able to retain the benefits of salary increases earned with FTAS upon return to IRS.

Taken together, *Whelan* and *Carrasco* establish that under section 183(10).9(2) an employee returning to the IRS from FTAS is entitled to a salary equal to the salary he received for more than one year in the FTAS.[2]

In the third case, *Flaherty v. United States, supra,* the employee had returned to the Internal Revenue Service after the regulation was changed. We held that the employee was not entitled to the higher salary he had received while in the FTAS (GS–16) "because of the combination of three factors which separate plaintiff Flaherty from that of the IRS employees to whom we earlier granted relief." 610 F.2d at 757. These "interconnected bases for denying plaintiff's claim" (*id.*) were as follows:

First, although section 183(10).8(2) granted employment rights only for two consecutive tours with the FTAS, Flaherty was seeking the higher pay he had received in the FTAS during his fourth tour.

Second, when Flaherty initially was appointed to the FTAS, he was a grade GS–13. Before Flaherty departed on his fourth tour, the Director of the IRS Personnel Division sent him a memorandum, dated October 23, 1973, explicitly stating that

---

**2.** This does not mean that the agency necessarily must place the returning employee in the highest grade that will produce a salary equivalent to that which the employee earned in the FTAS. The salaries of the top steps of one grade frequently overlap with the salaries at the lower steps of the next higher grade. The IRS may satisfy its obligation to a returning FTAS employee by placing him at a step of a grade that will give him the same salary he had

while overseas. *See Carrasco, supra,* 215 Ct.Cl. at 32–33. In the present case the IRS was not required to have placed the plaintiff in a GS–15 job when he returned, even though his grade in the FTAS carried a salary equivalent to that of grade GS–15. If there was a step in grade GS–14 that provided a salary equal to plaintiff's FTAS salary, the IRS could have placed the plaintiff in that step of the lower grade.

upon the completion of that assignment "you will have reemployment rights to a GS–13 position." *Id.* at 758 n.4.

Third, Flaherty's fourth tour ended more than 7 months after the regulation had been amended to eliminate the pay-on-return provision of section 183(10).9. The court stated (*id.* at 759, footnote omitted): "Literally and grammatically, the regulation gives pay rights only upon return—and the amendment of March 1975 was made half-a-year before plaintiff returned. The problem is, however, whether this literal reading should prevail or whether it is overcome by considerations of fairness or justice." The court concluded (*id.* at 759–60) that Flaherty

> had no reasonable expectation, when he left on his fourth assignment, of being paid by the IRS, on his return, the higher salary later mandated by court decree in *Whelan.* The memorandum of October 23, 1973 (discussed above) must have destroyed any such hope, if one existed. By the same token, the change in the regulations in March 1975 could not have defeated any proper anticipation of this plaintiff. There is therefore no reason in fairness or justice for refusing to follow in this case the language of § 183(10).9 which suggests that no right to reemployment pay "vests" until the employee returns on completion of his foreign assignment. And it is agreed that under the new regulation there is no right to the *Whelan-Carrasco* level of pay.

■ In the present case, unlike *Flaherty,* the plaintiff had a "reasonable expectation" in 1973 when he accepted the assignment to Uruguay that upon his return the IRS would pay him at a level equal to his higher FTAS salary. If he had not accepted that assignment but then had returned to the IRS, he would have been entitled under section 183(10).9(2), as we subsequently interpreted it in *Whelan* and *Carrasco,* to be paid a salary equal to that he had received in the FTAS, which at that time apparently would have been GS–14. Moreover, the "plain language" of that section (*Whelan, supra,* 208 Ct.Cl. at 693, 529 F.2d at 1002)

not only would have entitled him to that salary level but also reasonably would have led him to expect that he would receive a comparable salary upon completion of his assignment in Uruguay. This conclusion is in accord with the statement in plaintiff's affidavit that "at no time during the recruitment of me for FTAS service was I informed that upon my return stateside I would be *limited* to the *grade* of my former position." (Emphasis in original.) Thus, again unlike *Flaherty,* "the change in the regulations in March 1975" did "defeat [a] proper anticipation of this plaintiff." *Flaherty, supra,* 610 F.2d at 759–60.

As noted, *supra* p. 3, section 183(10).8(2) provided reemployment rights only after completion of the first two consecutive assignments to FTAS. The plaintiff contends that his assignment to Uruguay was only his second assignment, but the government asserts that it was his third one. We find it unnecessary to resolve this issue because, even if it were a third assignment, the plaintiff still would be entitled to the higher salary he received while assigned to the FTAS.

At the time of plaintiff's assignment to Uruguay, a Regional Commissioner for the area in which plaintiff had been employed prior to his joining the FTAS advised the Director of the Tax Administration Advisory Staff of the national IRS office that "we will extend to Mr. Trabal, upon his completion of his third tour, the same rights he had upon completion of his second tour." Since participation in the program was voluntary, this undertaking undoubtedly encouraged plaintiff to accept the assignment. *See Carrasco, supra,* 215 Ct.Cl. at 28. Although the record does not show whether or when this information was given to the plaintiff, the nature of the information justifies the inference that the plaintiff was informed of this commitment when he accepted the assignment. Indeed, it is probable that the decision to accord plaintiff those reemployment rights resulted from an inquiry by plaintiff about what his salary would be upon his return if he accepted the new assignment.

Although the government correctly stated that the Regional Commissioner had no authority to commit the Service to not changing the regulation during plaintiff's tour of duty in Uruguay, apparently he was authorized to decide that plaintiff's salary level with the IRS would not be adversely affected if the plaintiff accepted the assignment. Thus, although Flaherty's "reasonable expectation" was that he would receive only a GS–13 upon his return, the plaintiff's was that he would receive the higher salary he had in Uruguay.

In holding for the plaintiff in this case, we do not question the general authority of the United States to change the standards governing the terms and conditions of employment for existing employees. Government employment "does not . . give rise to a contractual relationship in the conventional sense" (*Urbina v. United States*, 192 Ct.Cl. 875, 881, 428 F.2d 1280, 1284 (1970)), and unless a statute or regulation provides otherwise, a government employee ordinarily has no vested right in his existing salary and other emoluments and conditions of employment. We hold only that, in view of all the special circumstances of this case, the repeal of section 183(10).9(2) cannot be applied retroactively to deny to plaintiff, upon returning to the IRS, the higher salary he had been receiving for more than a year while in Uruguay.

## CONCLUSION

The plaintiff's motion for summary judgment is granted, and the defendant's cross-motion for summary judgment is denied. The case is remanded to the Trial Division to determine the amount of recovery (*see* note 2, *supra* ) under Rule 131(c).

COWEN, Senior Judge, dissenting:

I think that in its laudable effort to reach an equitable result, the court has erred in concluding, upon the facts before us, that the plaintiff had a reasonable expectation that upon returning to the Internal Revenue Service, he would receive the high salary which he had been paid for more than a year during his FTAS assignment in Uruguay. As I read the opinion, it also appears to me that the decision, in important respects, is inconsistent with this court's recent holding in *Flaherty v. United States*, 222 Ct.Cl. ——, 610 F.2d 756 (1979).

Relying on *Whelan v. United States*, 208 Ct.Cl. 688, 529 F.2d 1000 (1976), the court states that the plain meaning of section 183(10).9(2) of the regulations not only would have entitled plaintiff to the salary received during his FTAS assignment, but also reasonably would have led him to expect that he would receive a comparable salary upon his completion of his assignment in Uruguay. A contention which is identical to this conclusion was considered and rejected in *Flaherty*.

It must be remembered that the petition in the *Whelan* case was filed in 1974 and that the decision was not handed down until January 28, 1976. Plaintiff's assignment to the duty station in Montevideo, Uruguay occurred in July 1973, about 6 months before the petition in *Whelan* was filed and over 2 years before *Whelan* was decided. Of course, at that time the IRS understood that its regulations regarding employment rights entitled plaintiff only to the pay of a GS–11 level position, the same position he occupied when he left the United States. Consequently, as the court stated in *Flaherty*, 610 F.2d at 759, "until *Whelan* was decided on January 18 [sic], 1976, IRS did not read the regulations as this court later did—and it is very doubtful that affected IRS employees had anything more than a hope of higher pay. * * * "

In my opinion, the court has also misinterpreted the memorandum of July 18, 1973, from the Regional Commissioner for the Southeast Region to the Director of the Tax Administration Advisory Staff regarding the reemployment rights of Mr. Trabal. The memorandum reads as follows:

Yesterday Ed Clark and our Regional Personnel Officer, James Corley, discussed Mr. Trabal's reemployment rights after his completion of a third consecutive overseas tour with your staff. The Internal Revenue Manual is silent on reemployment rights of employees who

receive more than two consecutive assignments.

This is to advise you that we will extend to Mr. Trabal, upon his completion of his third tour, the same rights he had upon completion of his second tour. [Defendant's exhibit 1.]

There is no proof that this memorandum was ever communicated to plaintiff, but for the purposes of this dissent, I will assume that it was, just as the court has done. It is true that the memorandum is slightly different from that sent to plaintiff in *Flaherty*. There the plaintiff was advised by memorandum that upon his return from his fourth assignment in the FTAS, he would have employment rights to a GS–13 position, the position he held when he left IRS to take the foreign assignment. I think this difference is immaterial because the "reemployment rights" referred to in the Regional Commissioner's memorandum must have meant the rights which the IRS understood to be in effect as a result of its interpretation of the existing regulations— that is, the reemployment of plaintiff at the GS–11 position which he left. If the memorandum had been communicated to plaintiff and he had inquired as to the extent of his reemployment rights, it is inconceivable to me that the Regional Commissioner or any other authorized official of IRS would have advised Mr. Trabal that such rights would be the same as those which this court held that the plaintiff was entitled to in *Whelan*. If, as claimed, Mr. Trabal accepted the assignment in Uruguay in reliance upon the *Whelan* interpretation of section 183(10).9(2), it can hardly be said that this was a reasonable expectation in view of the agency's contrary interpretation and the fact that *Whelan* was not decided until more than 2 years later.

In *Flaherty*, the court emphasized and relied upon the fact that the IRS regulation of March 31, 1975, which replaced the language relied upon by the court's decision in *Whelan*, was incorporated in section 0352.3 and that the change occurred 6 months before Mr. Flaherty's return from foreign service. In the case before us, the amendment became effective some 4 months be-

fore Mr. Trabal's return to the United States. Therefore, the circumstances affecting Mr. Trabal are in that respect similar to those involved in *Flaherty*.

The court recognizes the "general authority of the United States to change the standards governing the terms and conditions of employment for existing employees," and also declares that "unless a statute or regulation provides otherwise, a government employee ordinarily has no vested right in his existing salary and other emoluments and conditions of employment." Despite these statements, it appears to me that the court has, in effect, adopted plaintiff's position that when he entered on his FTAS assignment in Uruguay, the rights to which he would be entitled in accordance with *Whelan* became vested, and therefore, that the amended regulation of March 31, 1975, cannot be applied retroactively to deny plaintiff the higher salary he had been receiving while in Uruguay.