Karl F. **KELLERMAN**

v.

The **UNITED STATES.**

No. 128–73.

United States Court of Claims.

Oct. 23, 1974.

John I. Heise, Jr., Silver Spring, Md., attorney of record, for plaintiff.

Peter A. T. Sartin, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant; Karen A. Berndt, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and

SKELTON and KUNZIG, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

We face in this suit for back pay and ancillary relief the question of whether the Air Force Systems Command (Systems Command) properly exercised its discretion in refusing to adjust plaintiff's salary to take advantage of the lifting of a Congressional wage ceiling. We conclude that defendant either had no discretion to act as it did or, alternatively, abused the discretion it exercised. Consequently, we hold for plaintiff.

The material facts are not disputed. Plaintiff, a career Civil Service employee and a preference eligible, was approved on January 10, 1965 as a Public Law 80–313 (P.L. 313) employee in Systems Command. P.L. 313, codified in 10 U.S.C. § 1581 (1970), authorizes the Secretary of Defense to establish up to 530 specialized civilian positions to carry out research and development relating to the national defense. Within the Air Force, this law was put into effect as the Air Force Executive Assignment Program.

The positions thus created are in the classified Civil Service, but are not included in the General Schedule (GS) for grade and salary purposes. P.L. 313 authorizes the Secretary of Defense, with the approval of the Civil Service Commission (CSC), to fix the rates of compensation for positions in the program,

provided that he keep within the General Schedule pay ranges between GS–16, step 1 and GS–18, step 10. 10 U.S.C. § 1581(b) (1970).

Applying this statute, Air Force Manual (AFM) 40–2, § 4–6b provides:

Initial PL 313 position salaries are established within the salary range of the first step of GS–17 and the maximum salary rate of GS–18. Salaries *are established to coincide with one of the General Schedule step rates* for these grade levels and in consideration of:

(1) The value of the position to the organization.

(2) The salary alignment with comparable PL 313 positions.

(3) The recognized standing of the candidate in his scientific and professional field. (emphasis added)

AFM 40–2, § 4–6c(1) goes on to direct that, as a general rule, Air Force commands are to review P.L. 313 salaries at least once a year to recommend pay increases, based on contribution of the position to its organization.

In conformity with these statutory and regulatory guides, the analysis substantiating plaintiff's appointment at GS–18 read in part:

The level of difficulty, the high degree of originality and ingenuity necessary to properly perform the duties and the overall importance of this position in the policymaking structure of the Command, along with the responsibilities for planning and directing of a specialized scientific and technical program of national significance allocates this position at the GS–18 level.

Accordingly, plaintiff's grade level was established at the GS–18, step 1 level, with a salary of $27,055.

In July 1968, Congress increased the wage rate for GS–18 employees across the board to $30,239. Due to a limitation in the Federal Salary Act of 1967, however, no GS employee could be paid more than $28,000, and P.L. 313 employees were frozen at that limit. On July 14, 1968, pursuant to a regular agency wage review, the salaries of P.L. 313 employees in Systems Command slotted at the GS–18 level, including plaintiff, were raised to the $28,000 ceiling.

In January 1969, a decision was taken in Systems Command to abolish plaintiff's position because the need for the position no longer existed. Approximately one month later, Congress lifted the ceiling on executive GS levels. The salaries of all P.L. 313 employees, save plaintiff, were accordingly adjusted to the authorized GS–18 level previously blocked by the 1967 ceiling. As a result of the adjustment, the salaries of P.L. 313 executives at the GS–18, step 1 level were raised to $30,239, while those at the GS–17, step 3 level rose to $28,014. In explaining to Air Force Headquarters why plaintiff's salary alone was being retained at the former ceiling, the Director of Systems Command Civilian Personnel wrote:

In view of the pending abolishment of Mr. Kellerman's position, General Ferguson [Commander, Systems Command] felt his salary should remain at $28,000.

By notice of reduction in force (RIF) dated May 29, 1969, plaintiff was informed he was to be released effective June 30. In lieu of separation, plaintiff was offered a non-P.L. 313 position as general engineer, GS–15, at a salary of $25,711. On June 13, 1969, this offer was amended to one as supervisory general engineer, but with no increase in proffered salary. Because plaintiff's salary was at this point lower than that of any other P.L. 313 employee in Systems Command, he was not offered the chance to displace any such employee slotted at a lower grade. Ten days later, plaintiff was notified that his failure to reject the offered GS–15 position constituted his acceptance.

Plaintiff's administrative appeal of this Air Force action followed a long

and complicated procedure through the CSC. Ultimately, on September 1, 1972, the CSC Board of Appeals and Review (BAR) sustained the Air Force, holding plaintiff was properly deprived of a salary increase in February 1969, which would have allowed him to "bump" another P.L. 313 employee at the time of his RIF. The BAR concluded that no statute or Air Force regulation *required* the Air Force to grant plaintiff a salary increase pursuant to the Congressional lifting of the 1967 salary ceiling. Specifically, the BAR held that AFM 40–2 required P.L. 313 wages to coincide with General Schedule salaries only *initially*, and that no subsequent adjustment was mandated.

Plaintiff's request for review of this administrative determination is before the court on cross-motions for summary judgment. We conclude that the BAR decision is erroneous as a matter of law and that plaintiff · is entitled to judgment.

Plaintiff asserts that the controversy at hand does not involve whether he was entitled to a salary increase in February 1969: that decision had been taken the previous July when Systems Command applied Congress' across-the-board increase in General Schedule wages to all P.L. 313 employees including plaintiff. According to plaintiff, his case turns on whether the Air Force acted arbitrarily and capriciously in denying him the benefit of the salary increase by refusing to let him take advantage of the February 1969 wage ceiling removal. Plaintiff argues the Air Force had no discretion under its own regulations and practices to refuse lifting the ceiling on plaintiff's wages. Indeed, plaintiff suggests the Air Force sought to discriminate against him in not lifting the ceiling on his salary.

Defendant responds that the statutory and regulatory scheme under which plaintiff was employed leaves salary adjustments to the discretion of the employing agency, and that judicial review of plaintiff's plight is consequently inappropriate.

### No Discretion

█ While we find the issue thus joined a close one, we believe plaintiff's argument carries the day. The Air Force regulations cited above, which put P.L. 313 into operation, make clear that both the initial pegging and subsequent review of P.L. 313 wage levels are to be undertaken in the light of the particular position's value to its organization. Defendant argues the Air Force refusal to allow plaintiff the benefit of the 1969 wage ceiling increase was justified by this regulatory authority since the impending RIF of plaintiff's position reflected the position's reduced value to Systems Command.

Without attempting to define comprehensively the scope of the Air Force's discretion regarding salaries of P.L. 313 employees, we conclude that the question of whether to grant plaintiff the benefit of the February 1969 wage ceiling removal was not a matter of departmental discretion. The decision to adjust upward P.L. 313 salaries in conformance with the Congressional across-the-board salary raise of July 1968 was taken by the Air Force in the same month. Presumably, the Air Force intended for its P.L. 313 employees pegged at the GS–18, step 1 level to enjoy the full, revised salary for General Schedule executives of that grade. This is logically inferred from the regulatory framework of the Air Force P.L. 313 program, which directs that salaries of program positions are established to "coincide" with those of particular grades and steps in the General Schedule. An increase to the full GS–18, step 1 wage level was in fact allowed for every Systems Command P. L. 313 employee pegged at that level, save plaintiff, when the pay ceiling was lifted in February 1969.

Once the Systems Command decided to allow its P.L. 313 employees the full benefit of their July 1968 salary raise,

it discriminated without justification by singling plaintiff out for different treatment. The February 1969 salary jump did not result from the periodic review of P.L. 313 positions envisaged by Air Force regulation; it represented instead a delayed realization of the wage adjustment *already earned* by P.L. 313 employees the previous summer.

In this light, the present controversy finds strong analogy in our earlier case of Nordstrom v. United States, 177 Ct. Cl. 818 (1966), where petitioner was awarded the benefit of a *general* reclassification upward in the grades of certain federal positions. The court's reasoning there is equally applicable to the present dispute:

> In the instant case, no exercise of discretion is required. Plaintiff is not seeking a promotion—he is seeking the benefit incident to a reclassification, an automatic action which applied to everyone [in plaintiff's position].

177 Ct.Cl. at 825. The case now at bar involves not a general reclassification of grade level but a similar general removal of a wage ceiling.

Defendant does not strengthen its argument by citing other instances in which P.L. 313 employees were denied pay increases. Indeed, this factor might cut *against* defendant since none of the other alleged refusals to increase pay involved the lifting of an across-the-board wage ceiling. All of them purportedly concerned instances in which Systems Command declined to extend a Congressional General Schedule increase to particular P.L. 313 employees. Thus, in none of those instances could the employee be said to have already "earned" the increase being denied.

### Abuse of Discretion

 Even were the wage ceiling removal considered a matter of agency discretion, we would have to conclude that Systems Command abused its discretion in refusing to lift the ceiling in the present case. This is because the failure to allow plaintiff to take advantage of the ceiling removal led directly to denial of his Veterans' Preference Act (VPA) retention rights.

Section 12 of the VPA guarantees each preference eligible the opportunity to "bump" employees occupying lower retention levels within the same competitive group. 5 U.S.C. § 3502(b) (1970). By Air Force regulation, the application of the VPA benefit to P.L. 313 employees is expressly recognized, provided the "bumping" employee has "greater retention standing and receives a higher salary" than the "bumped" party. AFM 40–2, § 4–9(a)(2). Violation of his "bumping" rights gives a separated preference eligible employee a cause of action for back pay. Newman v. United States, 143 Ct.Cl. 784 (1958); Baxter v. United States, 136 F.Supp. 748, 129 Ct. Cl. 254 (1954), cert. denied, 350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817 (1956).

Despite his preference eligible status, plaintiff was offered no other P.L. 313 position at the time of his RIF notification, even though at least one such employee, Ulrich K. Heidelauf, slotted as a GS–17, step 3, occupied a lower retention category. This was due to the fact that, by remaining the only P.L. 313 employee locked into the 1967 $28,000 wage ceiling, plaintiff at the time of his RIF had the lowest "representative rate" (salary, for VPA purposes) in his competitive group, although his position had initially been pegged at one of the highest GS levels permitted by statute.

Defendant concedes that plaintiff's salary alone prevented him from displacing a lower retention P.L. 313 employee. By letter of April 6, 1970, the Air Force Civilian Personnel Officer informed the CSC Appeals Examining Office that plaintiff could not "bump" Dr. Heidelauf in particular because plaintiff's salary was too low. At the time of plaintiff's RIF, Dr. Heidelauf, despite his lower slotting had a representative rate of $14 higher than that of plaintiff,

having been allowed to take advantage of the February 1969 salary ceiling lift.

Against this background, the present case emerges as similar to the dispute in Smith v. United States, 151 Ct.Cl. 205 (1960), where we ruled that a RIF was wrongfully conducted in violation of preference eligible rights. The court there explained at 208:

> Had plaintiff been given the same treatment as other employees, the opportunity to be considered for reassignment to another position in the same lower level * * * would have been accorded him. Instead, plaintiff was reassigned and retained in an identical position to the one which had just been abolished by the reduction-in-force action. This placed plaintiff in the absurd position of having only himself to compete with in any future reduction in force.

In the present case, plaintiff is again being treated differently from his fellow employees; and the result is to leave him in the equally absurd position of having no one else to displace.

Regardless of whether defendant had discretion to withhold the benefit of a Congressional wage ceiling removal, the withholding of the benefit in this particular case resulted in an unnecessary forfeiture of plaintiff's VPA rights. It is irrelevant whether this injury was deliberately inflicted, as plaintiff suggests. Because of the illegal result produced, the Air Force withholding of the ceiling removal from plaintiff's salary on the basis of plaintiff's impending RIF constituted an abuse of discretion.

For either one of the two reasons set forth above, we conclude that plaintiff is entitled to relief as a matter of law. Accordingly, defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is granted. Plaintiff is entitled to recover back pay and to receive an adjustment in his retirement rate by reason of salary lost during the period claimed. Judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 131(c).