**William L. GINNODO, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**Appeal No. 84–1243.**

United States Court of Appeals, Federal Circuit.

Feb. 4, 1985.

William L. Ginnodo, pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen and Sara V. Greenberg, Dept. of Justice, Washington, D.C., submitted for appellee.

Stuart D. Rick, Washington, D.C., of counsel.

Before NIES, NEWMAN, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

William L. Ginnodo appeals from the decision of the Merit Systems Protection Board, Docket No. CH03518210502, —— M.S.P.R. ——, upholding the Office of Personnel Management's (OPM) action in separating Mr. Ginnodo under reduction in force (RIF) procedures which placed him in a one-person competitive area. We affirm.

## BACKGROUND

Mr. Ginnodo was employed as chief of OPM's staffing division in Chicago, Illinois until September 1979 when he was temporarily reassigned to serve as a consultant to the Westinghouse Electric Corporation under the Presidential Executive Interchange Program. Upon his return, he was assigned to a Task Force as a management consultant for OPM's Central Office located in Washington, D.C. but was permitted to continue working in Chicago. By memorandum dated December 10, 1981, OPM

clarified its RIF policy, by stating that all employees of the Central Office whose duty locations were outside the Washington metropolitan area did not fall under the category of OPM "Field Offices" in those areas. Instead, the Central Office had several competitive areas because of geographic dispersion of employees, *e.g.*, Boyers, Pennsylvania; Macon, Georgia; Charlottesville, Virginia; Oak Ridge, Tennessee; etc. In January 1982 the OPM notified Mr. Ginnodo that due to budgetary constraints requiring a reduction in force it intended to abolish his position. In March 1982 he was separated from the federal service. Mr. Ginnodo had been placed in a "competitive area" defined by OPM as "Central Office Employees Located in the Chicago Metropolitan Area." Since Mr. Ginnodo was the only such employee and his position was eliminated, there was no position for which he could compete for retention. Mr. Ginnodo argues that by denying him all opportunity to compete with other employees, OPM violated the provisions of 5 C.F.R. § 351.402 (1982)[1] and its own policies for the establishment of competitive areas as clarified by the amended text of that regulation.[2] The government counters that its actions were in accord with 5 C.F.R. § 351.402 which permits utilization of both the organizational unit and the commuting area.

## ISSUE

The sole issue raised on appeal is whether OPM improperly determined Mr. Ginnodo's competitive area.

## OPINION

It is uncontroverted that OPM defined Mr. Ginnodo's competitive area in a way that resulted in his being its sole occupant. Mr. Ginnodo does not dispute the propriety of a one-person competitive area, *per se.* It is his contention, however, that as a satisfactory tenured employee he should have been entitled to compete for retention under 5 U.S.C. § 3502 and that the agency violated this right by not taking positive actions prior to the RIF that would have placed him in an administrative unit large enough to afford him competition. More particularly, he argues that he was entitled to compete at least with the other members of the Task Force, all of whom were in Washington, D.C., and that his single position could not reasonably be designated as an organizational unit.

■ This court has held that while the regulations promulgated pursuant to 5 U.S.C. § 3502 create retention rights among competing employees in a competitive area, they do not guarantee that there will be positions for which employees may compete. *Grier v. Department of Health and Human Services*, 750 F.2d 944, 947 (Fed.Cir.1984). Mr. Ginnodo was therefore not entitled as a matter of right to actually compete with other employees for retention.

■ With respect to Mr. Ginnodo's argument that his position could not reasonably be designated as an organizational unit, the simple answer is that it was not. The

**1.** 5 C.F.R. § 351.402 is entitled "Competitive area" and provides as follows:

    (a) Each agency shall establish competitive areas in which employees compete for retention under this part.

    (b) The standard for a competitive area is that it include all or that part of an agency in which employees are assigned under a single administrative authority. A competitive area in the departmental service meets this standard when it covers a primary subdivision of an agency in the local commuting area. A competitive area in the field service meets this standard when it covers a field installation in the local commuting area.

**2.** The amended text of paragraph (b) effective November 25, 1983, reads as follows:

    A competitive area may consist of all or part of an agency. The minimum competitive area in the departmental service is a bureau, major command, directorate or other equivalent major subdivision of an agency within the local commuting area. In the field, the minimum competitive area is an activity under separate administration within the local commuting area. A competitive area must be defined solely in terms of an agency's organizational unit(s) and geographical location, and it must include all employees within the competitive area so defined.

organizational unit was the "Central Office." Further, under the regulations, an agency may use both organizational unit *and* commuting area in establishing a competitive area. Contrary to Mr. Ginnodo's argument, a one-person competitive area is not limited to situations where there happens to be a one-person organizational unit. Thus, the subject competitive area was not in conflict with the regulations.

■ Neither was OPM under an obligation to take positive actions to place Mr. Ginnodo in a larger competitive area. As this court stated in *Grier*, 750 F.2d at 946, an "agency may, but need not, expand the competitive area to provide actual competition. This is left solely to the agency's discretion...."

■ In order for Mr. Ginnodo to prevail on his right to competition argument, he must show a clear abuse of discretion on the part of OPM. *See Cooper v. TVA*, 723 F.2d 1560, 1562 (Fed.Cir.1983). To meet this burden, Mr. Ginnodo would have had to show that the agency's decision was arbitrary or irrational, *e.g.*, in this case by showing that he was being treated differently from his fellow employees. *See Smith v. United States*, 151 Ct.Cl. 205, 208 (1960); *Kellerman v. United States*, 205 Ct.Cl. 484, 504 F.2d 1128, 1132 (1974). There was no showing to this effect. In fact, the record supports OPM's actions. Its memorandum of December 10, 1981 (three months prior to the date of Mr. Ginnodo's RIF notice), clearly sets forth that OPM's Central Office employees whose duty locations are outside of Washington did not fall under the category of OPM "Field Offices" and that the Central Office had several competitive areas based upon the geographic dispersion of its employees. Mr. Ginnodo made no showing that Central Office employees in any other geographic location outside of Washington were treated any differently than he was. He does contend that the employees in these outlying locations had other employees against which to compete. That may well be, but so long as none of these competitive areas was expanded by OPM to provide actual competition, no abuse of discretion has occurred. *See Grier*, 750 F.2d at 946–47. There being no evidence of such an expansion, Mr. Ginnodo has not met his burden of showing that he was treated differently from other employees. Thus, the agency's decision as to his competitive area was not arbitrary, capricious, or irrational.

Since petitioner has shown no misconstruction of the statute, violation of applicable regulations, or abuse of discretion by the agency, we affirm.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent from the majority's affirmance of the Board's decision. Placing Mr. Ginnodo in a one-person competitive area, despite the flexibility to enable competition which the statute and regulations provide to the agency, disserves the policy and is contrary to the purpose of the official procedures governing RIFs.

## OPINION

In addition to the CFR sections cited by the majority, certain portions of the Federal Personnel Manual (FPM) and the OPM's internal regulations are relevant. The FPM regulations which implement 5 C.F.R. § 351.402 provide as follows:

a. *OPM standard.* Each agency establishes competitive areas within which employees compete for retention under the reduction-in-force regulations. The standard for a competitive area is that it include all or that part of an agency in which employees are assigned under a single administrative authority. Described geographically or organizationally, or both, the competitive area outlines the boundaries of reduction-in-force competition. The competitive area should be large enough to permit adequate competition among employees and limited enough to be administratively manageable....

b. *Extent of area.* ... A competitive area need not be larger than a commuting area. When either a field installation or a departmental headquarters has components in more than one commuting area a separate competitive area may be established for each commuting area. An agency's different activities, although located side by side, may be separate competitive areas if each is:

(1) under a separate administrative authority;

(2) independent of the others in operation, staff, work functions, and personnel administration; and

(3) separately organized and clearly distinguished from the others.

FPM Ch. 351, subch. 2, 2–2.b, at 351–11 (1981).

OPM's implementing regulations are consistent with the CFR and FPM provisions:

2–1. *Competitive Areas*

A competitive area includes all or that part of an agency in which employees are assigned under a single administrative authority. A competitive area at headquarters meets this standard when it covers a primary subdivision of an agency in a local commuting area. A competitive area in the field meets this standard when it covers a field installation in the local commuting area.

Competitive areas include employees in all grades in an organization or geographic area, not employees in only certain areas in an organization or geographic area. A competitive area may not be established on the basis of grade level or occupation. However, the area of competition for a particular action may be extended through granting assignment or bumping rights beyond the limits of the competitive area.

In accordance with the above standard for establishing competitive areas, the following competitive areas are designated for purposes of reduction-in-force in OPM:

a. *Central Office*

All OPM offices in the Washington Metropolitan Area comprise a competitive area.

b. *Field Offices*

(1) All OPM organizations in a commuting area together comprise a single competitive area.

OPM Personnel Manual Ch. 351, subch. 2, at 351–5 (1979).

A December 1981 OPM memorandum applied these regulations to central office employees not located in Washington, D.C.; Mr. Ginnodo's competitive area in Chicago was defined in such a way that he was its sole occupant.

OPM asserts that the rules permit such a result, and that OPM was not obliged to use its discretion in order to avoid such a result. The import of the regulations and the statute, however, is to provide employees subject to a RIF with reasonable and fair opportunity to compete for other jobs within the agency. This is one of the guiding purposes of this procedure, in harmony with the purpose of aiding the agency to effect an orderly RIF.

To this end the statute and regulations give the agency considerable discretion. The CFR provision requires each agency to "establish competitive areas in which employees compete for retention." 5 C.F.R. § 351.402(a). The FPM regulation directs the agency to establish competitive areas that are "large enough to permit adequate competition among employees." FPM Ch. 351, subch. 2, 2–2.a, at 351–11. The OPM's internal regulation provides that "the area of competition for a particular action may be extended through granting assignment or bumping rights beyond the limits of the competitive area".

In deciding whether an administrative agency has abused its discretion, we "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment". *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (citations omitted). I discern such error in the agency's treatment of Mr. Ginnodo. As

our predecessor court commented in *Smith v. United States*, 151 Ct.Cl. 205, 208–09 (1960), concerning a plan that would put an employee "in the absurd position of having only himself to compete with in any future reduction in force", such an employee "is entitled to different and better treatment".

In Mr. Ginnodo's situation, I deem it neither fair nor reasonable for the agency to have established a competitive structure which both excluded him from competition with field office employees in Chicago because he was affiliated with the central office, and excluded him from competition with central office employees because he was stationed in Chicago. It is my view that the agency made a clear error of judgment in refusing to exercise the discretion entrusted to it by the regulations to define Mr. Ginnodo's competitive area to ensure "adequate competition".