**William B. SCHMIDT, Petitioner,**

v.

**DEPARTMENT OF INTERIOR,**
**Respondent.**

**No. 97–3379.**

United States Court of Appeals,
Federal Circuit.

Aug. 20, 1998.

William L. Bransford, Shaw, Bransford & O'Rourke, Washington, DC, argued for petitioner. With him on the brief was Alicia A. Simolunas.

Jonathan M. Coleman, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director.

Before NEWMAN, PLAGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

William B. Schmidt petitions for review of the final decision of the Merit Systems Protection Board (Board) sustaining the action of the Department of the Interior (Interior or agency) removing him from the Senior

Executive Service (SES) and assigning him to a GS–15 position pursuant to a reduction-in-force (RIF). *See Schmidt v. Department of the Interior,* No. DC–0351–96–0878–I–1 (Oct. 31, 1996).[1] Because the Board correctly held that Interior did not abuse its discretion in using a bureau-wide competitive area for purposes of its SES RIF plan and because the Board also correctly held that it lacked jurisdiction to consider Mr. Schmidt's challenge to Interior's efforts to place him in a vacant SES position, we affirm.

## BACKGROUND

In July of 1990, Mr. Schmidt, who was a member of the SES, was appointed Chief of the Division of Environmental Technology in Interior's U.S. Bureau of Mines (BOM). He served in that position at the ES–05 level until June 4, 1996, when he was removed from the SES as part of a RIF that was occasioned by the closing of BOM.

### I.

The events leading up to the RIF began in 1995. In late February of that year, Rhea Graham, then-Director of BOM, testified at hearings before the House Interior Appropriations Subcommittee and the House Subcommittee on Energy and Mineral Resources. The purpose of the hearings was to consider BOM's budget and mission. A month later, the Subcommittee on Energy and Mineral Resources recommended that BOM continue operating at a spending level lower than that recommended by the President.

On June 30, 1995, the House Committee on Appropriations recommended that BOM be closed and that $87 million be appropriated for that purpose. At that time, based upon conversations with members of the Senate, however, Ms. Graham believed that the Senate would recommend continued funding for BOM. Indeed, on July 28, the Senate's Committee on Appropriations issued a report

---

1. The October 31, 1996 initial decision of the administrative judge (AJ) became the final decision of the Board, pursuant to 5 C.F.R. § 1201.113(b), on May 22, 1997, when the Board denied Mr. Schmidt's petition for review.

voicing strong support for BOM. The Committee recommended that Congress appropriate the President's full budget request for BOM.

Nevertheless, following the August recess, the House–Senate Conference Committee amended Interior's appropriation bill for fiscal year 1996 so as to identify BOM for elimination. *See* H.R. Conf. Rep. No. 104–259, at 6 (1995). The Conference Committee's report was issued on September 21, 1995. By memorandum dated December 15, 1995, Ms. Graham requested approval from Bonnie Cohen, Assistant Secretary of the Interior for Policy, Management, and Budget, to conduct a RIF of BOM's SES members. Ms. Cohen gave her approval the same day.

## II.

While the above-described events were taking place, Interior was in the process of revising and updating its SES RIF procedures. The effort was undertaken because there had been no significant revision of the procedures since at least 1982. In addition, Interior wanted to bring its procedures into compliance with final regulations issued by the Office of Personnel Management (OPM) on February 2, 1995. *See* 60 Fed.Reg. 6383 (1995) (codified at 5 C.F.R. part 359). Those regulations revised then-existing rules for conducting an SES RIF.

Interior's existing SES RIF procedures employed a department-wide competitive area. In the course of the revision effort, officials at Interior determined that it would be preferable to provide for bureau-wide competitive areas instead. Terry Steele, who was coordinator of executive and senior level programs within Interior's Office of Personnel and who drafted the revised SES RIF plan, testified at the Board hearing that the department-wide competitive area was perceived as unmanageable:

The old plan required that we would have a single area of competition, that if a RIF were required in any particular bureau for any reason or any place in the department for any reason—whether it was because of lack of funding or because of mission or program changes that suddenly an established and filled SES position was no longer necessary and needed to be abolished—it would throw the entire department SES cadre into a RIF situation.

The Office of Personnel or Office of Personnel Policy, as it has just been recently renamed, would have been responsible for establishing both competitive levels and then the retention registers within each competitive level for the whole department.

This would have required all the bureaus to provide us with the executives' official personnel folders. I assume—to me, a special staff would have had to have been established on a short-term to manage the project.

But it was the fact that you would be establishing competitive levels that would go completely across the department.

When you determine which positions within a particular competitive level were to be abolished, there was a great possibility of requiring geographic reassignments against the executive's will whose position had been abolished to take a position, you know, at another location.

To me, to reduce the area of competition was going to reduce the disruption that would be caused by a RIF and also reduce the cost incurred by the RIF.

At some point in the spring of 1995, Interior's Office of Personnel recommended establishing competitive areas at either the bureau or assistant secretary level. Subsequently, the two competitive area options (bureau-wide or assistant secretary level) were discussed by Interior's Policy Group, a body made up of the agency's upper-level political appointees. Eventually, the Policy Group recommended the adoption of bureau-wide competitive areas. On July 11, 1995, Interior issued its final revised SES RIF procedures.

The procedures established competitive areas comprised of bureaus and organizational components equivalent to bureaus. In addition, under the procedures, only SES members with the highest performance appraisals in the last four years and performance recognition awards received the most retention credit.

### III.

As noted above, Ms. Graham's request for approval to conduct an SES RIF at BOM was approved on December 15, 1995. Thereafter, by means of a RIF notice dated March 29, 1996, Mr. Schmidt was informed that his position had been abolished and that he was subject to removal from the SES. The notice also informed Mr. Schmidt that there was no vacant SES position within Interior for which he was qualified and that no SES positions remained within his competitive area, BOM. The RIF took effect on June 4, 1996. At that time, Mr. Schmidt was removed from the SES and, pursuant to an offer from Interior which he had accepted, was placed in a GS–15 position with the National Park Service.

Mr. Schmidt appealed his removal from the SES to the Board, pursuant to 5 U.S.C. § 3595(c) (1994). In so doing, he advanced several arguments. First, he contended that, by revising its SES RIF plan so that competitive areas were limited to the individual bureaus, Interior failed to comply with the "competitive procedures" for SES RIFs required by 5 U.S.C § 3595(a) (1994) and 5 C.F.R. § 359.602(a) (1998).[2] Mr. Schmidt contended as well that the 1995 SES RIF plan, pursuant to which he was removed, constituted a prohibited personnel practice, in violation of 5 U.S.C. § 2302(b)(6) and (b)(11). He also alleged that agency officials did not follow proper procedures when they failed to place him in another SES position within Interior.

The Board rejected all of Mr. Schmidt's arguments. First, in prehearing rulings, the

AJ determined that Mr. Schmidt's challenge to the efforts of the agency to place him and other employees of the Bureau did not concern the "competitive procedures" required by 5 U.S.C. § 3595(a) and therefore was not within the jurisdiction of the Board under 5 U.S.C. § 3595(c). Following a hearing, the AJ rejected Mr. Schmidt's remaining arguments. The AJ concluded that Interior had complied with the revised SES RIF procedures and that the revised procedures were consistent with the requirements of § 3595(a) and the pertinent regulations. He also concluded that Interior had not violated 5 U.S.C § 2302(b)(6) by developing an SES RIF plan that narrowed the scope of competition to the individual bureaus within the agency and that the revised SES RIF plan did not run afoul of 5 U.S.C § 2302(b)(11) by retaining individuals based on their location in the agency rather than upon performance. Accordingly, the AJ sustained the action of Interior removing Mr. Schmidt from the SES. As noted above, the Board denied Mr. Schmidt's petition for review. This appeal followed.

### DISCUSSION

Our review of Board decisions is strictly limited by statute. We may not reverse a decision of the Board unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without adherence to procedures required by law, rule, or regulation; or (3) unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c); *Wright v. Department of Transp.,* 900 F.2d 1541, 1544 (Fed.Cir.1990). On appeal, Mr. Schmidt asserts the same arguments that he raised before the Board.

### I.

■ Mr. Schmidt's first argument is that, when it conducted the SES RIF, Interior violated 5 U.S.C. § 3595(a) and 5 C.F.R. § 359.602(a)(2). Section 3595(a) provides as follows:

**2.** Unless otherwise noted, all citations to the United States Code refer to the 1994 edition, and

all citations to the Code of Federal Regulations refer to the 1998 edition.

An agency shall establish competitive procedures for determining who shall be removed from the Senior Executive Service in any reduction in force of career appointees within that agency. The competitive procedures shall be designed to assure that such determinations are primarily on the basis of performance, as determined under subchapter II of chapter 43 of this title.

Section 359.602(a)(2) tracks the statutory provision. It provides that "[a]n agency shall establish competitive procedures in writing to determine who will be removed from the SES in any reduction in force of career appointees within the agency. Such competitive procedures shall be based primarily on performance." 5 C.F.R. § 359.602(a)(2).

Mr. Schmidt argues that the RIF procedures that were adopted by Interior in 1995 violated the statute and implementing regulation because they limited competitive areas to bureaus. According to Mr. Schmidt, Interior's SES RIF plan failed to ensure that competition was based on the relative performance of the executives covered by the RIF, as required by the statute. He contends that, in order to comply with § 3595(a), Interior should have established a department-wide competitive area for its SES employees. He bases this contention on the fact that Interior's SES members were subject to the administrative authority of the agency's Executive Resources Board (ERB). Mr. Schmidt also contends that, before the Board, Interior failed to provide a rational explanation for its decision to structure the agency's competitive areas based upon its bureaus.

We note first that there is no language in the statute that requires that an agency conducting a RIF of SES employees adopt department-wide competitive areas. Section 3595(a) simply states that RIF procedures shall be designed to assure that the determination as to which employees shall be removed shall be made "primarily on the basis of performance." Indeed, Congress was urged to adopt statutory language which would have required department-wide competitive areas but declined to do so.[3] We further note that the relevant portion of the Federal Personnel Manual (FPM) Supplement recognizes that "5 U.S.C § 3595(a) requires competition for job retention." FPM Supplement 920–1, S10–7d(1) (1989).[4] It then continues by stating that "[t]he competitive area may be the full agency or a major component of the agency." *Id.* at S10–7d(2). In short, neither the language of the statute, the legislative history, nor OPM's guidance on the statute supports Mr. Schmidt's contention that Interior was required to adopt department-wide competitive areas as part of its SES RIF procedures.

■ As noted above, Mr. Schmidt argues that Interior should have established a de-

---

3. In testimony before Congress, the president of the Senior Executive Association (SEA) offered the following comments:

> The specific points we would like to raise on RIF's are as follows. First, we believe that for RIF purposes the definition of the competitive area for SES members should be the whole department. We want to avoid narrowly defined competitive areas which could have the effect of precluding real opportunities for placement in SES vacancies.

*Hearings on S. 958, the Merit Pay Reform Act of 1983, and Amendments to Expand Its Coverage with Regard to Regulations Proposed by the Office of Personnel Management Before the Subcommittee on Civil Service, Post Office, and General Services of the Senate Committee on Governmental Affairs,* 98th Cong. 230 (July 14, 1983) (statement of Charles F. Bingman, Acting President, SEA, accompanied by G. Jerry Shaw, General Counsel). Congress did not adopt the SEA's proposal.

4. The Federal Personnel Manual is the "Office of Personnel Management's official publication containing instructions to other agencies of the United States Government on matters of personnel management." FPM, Introduction (Mar. 30, 1990). While the basic manual provides general information regarding policies and requirements, the FPM Supplements provide detailed information intended for specialists in particular areas. *See id.* Although the FPM was no longer in force at the time of the RIF at issue in this case, it continues to be a valuable resource for construing regulations that were promulgated or were in effect before the FPM was abolished on December 31, 1993. *See Markland v. Office of Personnel Management,* 140 F.3d 1031, 1034 (Fed.Cir. 1998).

partment-wide competitive area for its SES members because, regardless of the particular bureau in which they worked, the SES members all were subject to the administrative authority of the ERB. Mr. Schmidt contends that a proper competitive area under § 3595(a) is one in which the employees are subject to a "single administrative authority." In making this argument, Mr. Schmidt cites *Williams v. Tennessee Valley Authority*, 24 M.S.P.R. 555, 557 (1984). In that case, the Board held that the government had violated 5 C.F.R. § 351.402(b) by conducting a RIF using competitive areas that failed to include all employees assigned under a single administrative authority. *See id.* Mr. Schmidt's reliance on *Williams* is misplaced, however, because § 351.402(b) does not apply to SES members. *See* 5 C.F.R. § 351.202(b) ("This part [Part 351] does not apply to an employee: ... In a position in the Senior Executive Service."). Accordingly, there is no requirement that competitive areas for SES RIFs include all employees subject to a single administrative authority.

■ Mr. Schmidt also contends that we should not uphold the Board's decision because, before the Board, Interior failed to provide a rational explanation for using bureau-wide competitive areas in setting up its SES RIF procedures. Specifically, Mr. Schmidt argues that Interior's decision on this point was irrational because (1) the decision was made without full understanding of RIF procedures; (2) the agency officials who formulated the RIF procedures in 1995 acted beyond the scope of their authority; (3) the officials did not consult with personnel specialists; (4) the agency provided no explanation for setting the competitive areas at the bureau level; and (5) the decision was inconsistent with the pertinent provisions of the FPM. These contentions are without merit.

■ Nothing in the record suggests that agency officials failed to fully understand the relevant RIF procedures. Nor did agency officials exceed the scope of their authority by adopting the SES RIF plan without the approval of the ERB; the adoption of such a plan does not require ERB approval. Section 3595(a) simply provides that "[a]n *agency* shall establish competitive procedures" for an SES RIF. 5 U.S.C. § 3595(a) (emphasis added). There is no requirement that the SES RIF plan be approved by the ERB. Nor is there a requirement that agency officials consult with personnel specialists prior to adopting an SES RIF plan. Furthermore, as noted above, Interior did provide an explanation for adopting bureau-wide competitive areas, and for the reasons discussed above, the use of those competitive areas did not conflict with the FPM.

■ Finally, it is well settled that, as long as an agency's actions are not arbitrary or capricious, it has the discretion to establish single-person competitive areas or competitive areas in which all positions are abolished. *See Ginnodo v. Office of Personnel Management*, 753 F.2d 1061, 1063 (Fed.Cir. 1985) (affirming agency's elimination of a competitive area consisting of only a single individual); *Grier v. Department of Health & Human Servs.*, 750 F.2d 944, 946 (Fed.Cir. 1984) (affirming agency's elimination of all positions in a competitive area). Mr. Schmidt argues that *Ginnodo* and *Grier* are inapplicable because both of those cases involved general schedule RIFs rather than SES RIFs. He contends that, unlike 5 U.S.C. § 3502(a), which governs RIFs of general schedule employees, § 3595(a) entitles SES employees to actually compete for retention. However, we discern no such distinction between the competition requirement in § 3502(a) and § 3595(a). Both sections require that the government establish competitive retention procedures, but neither statute guarantees that actual competition will occur. *Ginnodo* and *Grier* both apply in this case.

## II.

■ As he did before the Board, Mr. Schmidt argues that, in the course of the SES RIF, Interior committed various prohibited personnel practices, in violation of 5 U.S.C. § 2302(b)(6) and (b)(11). He also points to alleged violations of 5 U.S.C.

§§ 3392, 3393, 3131(7), and 3131(13).[5] Section 2302(b)(6) states that it is a prohibited personnel practice to

> grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment.

According to Mr. Schmidt, Interior violated this provision when it formulated an SES RIF plan that limited the competition among SES employees to individual bureaus. Mr. Schmidt contends that, by limiting competition in this way, Interior ensured that it would be able to exercise increased control over which employees would be retained at the conclusion of the RIF, thereby ignoring the requirement of § 3595(a) for competitive procedures. The argument requires little discussion. We have held above that Interior's use of bureau-wide competitive areas was permitted by 5 U.S.C. § 3595(a). In any event, there is no evidence in the record that, when it conducted the SES RIF, Interior was targeting particular employees, either for retention or separation.

■ Section 2302(b)(11) makes it a prohibited personnel practice to

> take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

The thrust of Mr. Schmidt's argument is that Interior violated this section and hence § 3595(a) by basing its RIF plan upon organizational location rather than on relative performance. As part of this argument, he also asserts that the RIF plan violated 5

U.S.C. §§ 3392, 3393, 3131(7), and 3131(13). The argument is unavailing. Again, we have held that Interior's SES RIF plan did not violate 5 U.S.C. § 3595(a). Also without merit are Mr. Schmidt's arguments relating to §§ 3392, 3393, 3131(7), and 3131(13). Sections 3392 and 3393 concern appointments to SES positions and are completely unrelated to the retention of employees during a RIF. Section 3131(7) states that the SES shall be administered so as to "protect senior executives from arbitrary or capricious actions." We have already discussed above why the agency's action was neither arbitrary nor capricious. Section 3131(13) states that the SES shall be administered so as to "provide for an executive system which is guided by the public interest and free from improper political interference." The record contains no indication that Mr. Schmidt's removal from the SES was influenced by political motives.

### III.

■ As noted above, the AJ determined that Mr. Schmidt's challenge to Interior's efforts to place him and other employees of the Bureau did not concern the "competitive procedures" required by 5 U.S.C. § 3595(a) and therefore was not within the jurisdiction of the Board. On appeal, Mr. Schmidt argues that this ruling was error. He contends that he should have been allowed to present evidence concerning the agency's efforts to place him and other SES employees during the RIF. He asserts that the evidence would have shown that the agency violated § 3595(a) by "hand-selecting" three senior executives from the Bureau for positions within Interior after the RIF was announced and by withholding "vacant" SES positions within Interior.

■ The AJ did not err in ruling that the Board lacked jurisdiction over Mr.

---

**5.** Although Mr. Schmidt invokes § 2302(b)(6) and (b)(11), as well as §§ 3392, 3393, 3131(7), and 3131(13), the substance of his argument is that Interior failed to comply with the competitive procedures required by § 3595(a). Because § 3595(c) limits the Board's jurisdiction to claims that an agency failed to comply with § 3595(a), we treat Mr. Schmidt's arguments as assertions that Interior violated that section, although those assertions are couched in terms of other statutory provisions.

Schmidt's complaints about Interior's efforts to place him and other SES employees. "The jurisdiction of the Board is not plenary. Rather, it is limited to those matters specifically entrusted to it by statute or regulation." *Serrao v. Merit Sys. Protection Bd.*, 95 F.3d 1569, 1573 (Fed.Cir.1996). Section 3595(c) provides that "[a] career appointee is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title whether the reduction in force complies with the competitive procedures required under subsection (a)." Thus, section 3595(c) limits the Board's jurisdiction to claims that the agency failed to comply with the competitive procedures required by § 3595(a). Mr. Schmidt contends that these competitive procedures must be utilized when placing SES members into vacant positions pursuant to § 3595(b)(3).[6] We do not read the statute in this manner. Section 3595(a) grants SES employees the right to compete for retention only within a particular competitive area. Once the agency has determined that an employee must be removed from the SES because all SES positions within the competitive area have been abolished or because the employee is too low on the retention register, no further competition is required by § 3595(a) for assignments to vacant SES positions pursuant to § 3595(b)(3).

As the AJ recognized, the essence of Mr. Schmidt's argument is that the agency failed to comply with § 3595(b)(3). Plainly, the Board lacks jurisdiction over such a claim. Prior to 1984, § 3595(c) granted SES members the right to appeal to the Board the

issue of whether the government took all reasonable steps to achieve placement in other SES positions as required by § 3595(b)(3).[7] However, in the 1984 amendments to this section, Congress specifically eliminated that appeal right and instead granted SES members the right to fallback to a GS–15 position. *See* Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, § 303, 98 Stat. 3195, 3218. Accordingly, the Board lacked jurisdiction over Mr. Schmidt's claim that the agency's placement efforts failed to comply with the statutory requirements.

■ Finally, Mr. Schmidt raises the additional contention that the Board had jurisdiction to review the agency's placement efforts pursuant to 5 U.S.C. § 2302(b)(4).[8] We disagree. Section 2302(b)(4) cannot establish Board jurisdiction because § 2302(b) is not an independent source of appellate jurisdiction and does not by itself authorize an appeal to the Board. *See Saunders v. Merit Sys. Protection Bd.*, 757 F.2d 1288, 1290 (Fed.Cir.1985) (holding that the Board lacks jurisdiction over a claim that an agency committed prohibited personnel practices in violation of § 2302(b)). Furthermore, Mr. Schmidt cannot avoid the limitations imposed by § 3595(c) on SES RIF appeals by invoking other statutory provisions. As discussed above, Congress specifically amended § 3595(c) to eliminate Board jurisdiction for exactly the type of claim asserted by Mr. Schmidt. The limitations on Board jurisdiction expressed in § 3595(c), a statute which

---

6. Section 3595(b)(3) grants SES employees the right to be assigned to any vacant SES position for which they are qualified:

    A career appointee who, but for this subsection, would be removed from the Senior Executive Service due to a reduction in force within an agency ... is entitled to be assigned by the head of that agency to a vacant Senior Executive Service position for which the career appointee is qualified.

    5 U.S.C. § 3595(b)(3).

7. Prior to the 1984 amendments, § 3595(c) read:

    (c) A career appointee is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title—

    . . . .

(3) in the event the career appointee is not placed under subsection (b)(3) of this section—

    (A) whether the Office of Personnel Management took all reasonable steps to achieve such placement, and

    (B) the decision of an agency under subsection (b)(3)(B) of this section that the career appointee is not qualified to be placed in a position.

    5 U.S.C. § 3595(c) (1982).

8. Section 2302(b)(4) provides that it is a prohibited personnel practice to "deceive or willfully obstruct any person with respect to such person's right to compete for employment."

deals specifically with SES RIFs, must prevail over other more general provisions such as those found in § 2302(b). *See Thiess v. Witt,* 100 F.3d 915, 919 (Fed.Cir.1996) (recognizing the standard rule that a specific statute controls over a more general one).[9]

## CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

---

**9.** To the extent that Mr. Schmidt argues that the agency violated § 2302(b)(4) by revising the competitive areas after it became aware that BOM would be eliminated, we are satisfied that substantial evidence supports the Board's finding that the SES RIF plan was revised prior to knowledge by the relevant officials that the BOM would be eliminated.